In re the LITCHFIELD COMPANY OF SOUTH CAROLINA LIMITED PARTNERSHIP, Debtor.

The LITCHFIELD COMPANY OF SOUTH CAROLINA LIMITED PARTNERSHIP, Plaintiff/Appellee,

v.

The ANCHOR BANK, Defendant/Appellant.

Bankruptcy No. C–B–91–30650.
Adv. P. No. 91–3166.

United States District Court, W.D. North Carolina.

Jan. 3, 1992.

---

Thomas B. Henson, Garland S. Cassada, Robinson Bradshaw & Hinson, P.A., Charlotte, N.C., for debtor.

Paul Burke O'Hearn, R. Matthew Martin, Jones Day Reavis & Pogue, Atlanta, Ga., Howell V. Bellamy, Jr., Rutenburg, Copeland, Epps, Gravely, Myrtle Beach, S.C., defendant/appellant.

## MEMORANDUM OF OPINION AND ORDER

MULLEN, District Judge.

This appeal arises out of an adversary proceeding by the debtor—a South Carolina limited partnership—against a creditor, The Anchor Bank, to enjoin the creditor's alleged violation of Bankruptcy Code § 362(a)(3), 11 U.S.C. § 362(a)(3) (hereinafter the "Code") and to enjoin, pursuant to Code § 105(a), the creditor's state court collection efforts against the debtor's partners and a guarantor of a substantial portion of the debts of the debtor. All of the debtor's creditors, who hold total claims of about $65 million, have recourse against the debtor's partners. Following the debtor's bankruptcy petition, defendant Anchor Bank sought to collect a $1,000,000 partnership debt from the debtor's partners and the estate of a deceased principal who guaranteed personally all of the debtor's bank debt. Without exception, the debtor's other bank creditors, who hold $24 million in claims against the debtor, concluded that the creditors as a group were better off avoiding a liquidation that would result from a chaotic scramble for the assets of the debtor, its partners, and its guarantor. Confronted with Anchor Bank's actions to collect its claim against the partners and guarantor, however, the debtor's bank creditors warned the debtor that they could not support the debtor's rehabilitation plan and refrain from joining Anchor Bank in a competition for the assets of the partners and guarantor if Anchor Bank was not restrained. On April 15, 1991, the debtor accordingly filed a complaint and motion for preliminary injunction asking the bankruptcy court to restrain Anchor Bank from continuing to prosecute its complaint.

Based on evidence offered at the hearing on the debtor's motion for a preliminary injunction, the bankruptcy court, Marvin R. Wooten, J., enjoined Anchor Bank from proceeding with its state court lawsuit against the debtor's partners and the guarantor. The bankruptcy court did so on alternative grounds. First, the court concluded that Anchor Bank's continuation of its state court action against the debtor's partners after the filing of the debtor's bankruptcy petition on March 15, 1991 violated the automatic stay of Code § 362(a)(3) because it interfered with the debtor's right under state law to marshal contributions from its partners which may be necessary to the debtor's successful reorganization. Second, the bankruptcy court exercised its discretion under Code § 105(a) to restrain the prosecution of Anchor Bank's action because such action jeopardized the debtor's ability to reorganize. To protect all of the debtor's creditors, including Anchor Bank, the court also restrained the partners and guarantors from actions that would prejudice creditors pending confirmation of a plan of reorganization under the Bankruptcy Code. Defendant Anchor Bank appealed the bankruptcy court's order enjoining its actions in state court.

## I.

The debtor is a South Carolina limited partnership engaged in the business of developing, operating and selling resort real estate, principally on the Coast of South Carolina. The sole general partner of the debtor is Litchfield Partners, a South Carolina general partnership. The two general partners of Litchfield Partners are William M. Webster, III ("Webster") and Litchfield Enterprises, Inc. (collectively the "Partners"). Until his death in October 1990, Anthony Foster McKissick, II was the sole shareholder of Litchfield Enterprises. (McKissick and his testamentary estate are referred to herein as "McKissick").

The debtor has total liabilities of about $65 million. Of this total debt, about $24 million is owed to numerous institutional lenders (the "Bank Debt"). Defendant Anchor Bank holds about $1,000,000 of the Bank Debt.

Under South Carolina law, Litchfield Partners, as the debtor's general partner, is liable for all $65 million of the debtor's liabilities. *See* S.C.Code Ann. 33–41–370 ("All partners are liable jointly and severally for everything chargeable to the partnership.") Under the same rule, Webster and Litchfield Enterprises—the two general partners of Litchfield Partners—are also jointly and severally liable for all of the debtor's liabilities.[1] In addition to their liability as general partners, Webster and McKissick each signed personal guarantees in which they undertook personal liability for virtually all of the debtor's Bank Debt. Thus, Webster stands liable personally for all of the debtor's $65 million in debts and McKissick for the $24 million in Bank Debt.

In 1989, the debtor began losing money. The financial losses resulted principally from two factors. First, the debtor's buyout in 1988 of two former partners increased its debt. Second, the economic recession caused a decline in real estate sales. As the debtor's losses mounted, its ability to make regularly scheduled debt service payments were threatened.

In early 1990, the debtor anticipated substantial calendar year losses. To ensure that it would be able to pay timely its obligations, the debtor obtained a substantial operating line of credit. The debtor also called for and obtained substantial cash advances from Webster.

In response to its financial problems, the debtor undertook to restructure its debts with its creditors by way of a work out agreement out of bankruptcy. On October 1, 1990, the debtor presented a written debt restructuring plan to its institutional lenders. On the date it presented the plan, the debtor was current on all of its payment obligations. The debtor's plan required the holders of Bank Debt to decrease their contract rates of interest and increase the time period within which their debts would be paid. However, the plan provided for the satisfaction in full of all of the debtor's secured and unsecured liabilities by the orderly sale of the debtor's inventory of real estate over time.

The premise of the debtor's plan was that, given time to market its real property, the debtor can repay in full all of its debts. Doug Richardson, the debtor's chief executive, testified that the debtor could sell its real property for $103 million given a four to seven year marketing period. At this rate, the debtor would be able to pay all liabilities in full plus interest.

In the event that the debtor is forced to liquidate its real estate inventory, on the other hand, Richardson testified that the debtor would not be able to pay all debts in full. Further, the assets of Webster and McKissick, against which the debtor's creditors also have recourse, have insufficient value to pay the deficiency. Thus, Richardson testified that the debtor's creditors as a group are better off by accepting a reorganization plan that allows the debtor to sell its real estate over time than by enforcing their debt collection rights individually and

---

[1]. Because Litchfield Partners, Webster and Litchfield Enterprises all have general partner liability for the debtor obligations pursuant to S.C.Code Ann. 33–41–370, they are collectively referred to herein as the "Partners."

thereby forcing the debtor to liquidate its inventory.

With the exception of defendant Anchor Bank, all of the debtor's lenders agreed with this conclusion and approved the debtor's restructuring plan. On the date that it presented the plan to Anchor Bank, the debtor was current on all of its payment obligations to Anchor Bank. In response to the debtor's plan, however, Anchor Bank "deemed itself insecure," accelerated the full indebtedness owed to it by the debtor, and demanded immediate payment in full from the debtor, Webster, and McKissick.

On October 11, 1990, Anchor Bank filed a complaint in South Carolina court against the debtor, Litchfield Partners, Litchfield Enterprises, Webster and McKissick, seeking immediate payment in full of $1,071,-869.55. Anchor Bank's complaint against the Partners was based on their status as partners of the debtor, as well as their status as guarantors.

On March 15, 1991, the debtor filed a voluntary Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Western District of North Carolina.[2] Pursuant to Code § 362(a)(1), the petition stayed Anchor Bank's collection action against the debtor. On April 11, 1991, however, the defendant sent notice to the debtor, the Partners, and McKissick that, on April 17, 1991, it was bringing a motion for summary judgment on its claims against Litchfield Partners, Webster, and McKissick.

■■■ Under South Carolina law, the debtor's partners owe a duty to the debtor to contribute to its losses. *See* S.C.Code Ann. 33–41–510. South Carolina law also empowers the debtor to compel contributions from its partners if necessary to pay its debts. *See* S.C.Code Ann. 33–41–1060. Based upon these statutes, the bankruptcy court found that the debtor negotiated with Webster and obtained his pledge to devote his net worth to support the debtor's plan of reorganization. The bankruptcy court also found that the debtor's plan of reorganization may depend on a cash contribution from Webster.

Like Anchor Bank, all of the debtor's other institutional lenders have recourse against the Partners and McKissick. With the exception of Anchor Bank, the debtor's other creditors continued, subsequent to the filing of the bankruptcy case, to support the debtor's reorganization and refrained from pursuing collection of their claims against the Partners and McKissick.[3]

Confronted with the Anchor Bank's unrelenting attempt to collect its debt from Webster and McKissick, however, the debtor's other unsecured institutional lenders warned the debtor that they would not cooperate with the debtor's reorganization efforts if the debtor allowed the Partners or McKissick to pay Anchor Bank or succumb to a judgment in its favor. Webster testified that if Anchor Bank proceeds to judgment against him, then he will be forced to file a bankruptcy petition. In such event, the value of Webster's assets, which are largely real estate holdings, would decrease. In addition, Webster testified that he would lose up to $1,000,000 of liquidity so that his ability to devote assets to the debtor's successful reorganization or pay the debtor's creditors in the event of the debtor's liquidation would be impaired. Thus, such a course of events would jeopardize the debtor's ability to reorganize.

In response to Anchor Bank's continued prosecution of its claims against the Partners and McKissick, the debtor took two steps. First, on April 15, 1991, the debtor

---

**2.** The debtor obtained consent to the restructuring plan of 97% of its creditors, with only Anchor Bank dissenting. The creditors would not consent to the plan, however, if the debtor, Webster or McKissick paid Anchor Bank outside of the plan. [T. at 30]. Thus, Anchor Bank's refusal to go along with an out-of-court plan left the debtor with no choice but to file a bankruptcy petition.

**3.** NCNB National Bank of North Carolina, a major creditor, appeared at the hearing on the debtor's motion for a preliminary injunction, voiced its support for the debtor's reorganization efforts and urged the court to enjoin Anchor Bank's collection actions against Webster, McKissick, Litchfield Partners and Litchfield Enterprises.

filed a complaint against the defendant, seeking to stay the defendant's lawsuit against McKissick. Second, the debtor negotiated a Standstill Agreement with Webster and McKissick in which they agreed to submit voluntarily their property to the bankruptcy court, file complete financial statements and refrain from undertaking transactions outside of the ordinary course of business without giving prior notice to the bankruptcy court, Anchor Bank and other creditors.

## II.

■ The bankruptcy court held that the defendant's continued action against the debtor's partners—Litchfield Partners, Litchfield Enterprises and Webster—violated the provisions of the automatic stay embodied in Code § 362(a)(3). That section prohibits "any act to obtain possession of property of the estate or property from the estate or to exercise control over property of the estate." The bankruptcy court concluded that, under South Carolina law, the debtor was empowered to compel its general partners to pay the debts of the debtor partnership and that, under Code § 541(a), this power became property of the estate upon the filing of the debtor's bankruptcy case. Applying Code § 362(a)(3), the bankruptcy court concluded that the defendant's prosecution of its complaint against the three partners for its own benefit interfered with the debtor's right under state law to pursue the same action against the partners for the benefit of all creditors. This conclusion is in accord with the law of the Fourth Circuit and consistent with the fundamental purpose of bankruptcy law.

■ In *Steyr–Daimler–Puch of America Corp. v. Pappas*, 852 F.2d 132, 136 (4th Cir.1988), the Fourth Circuit Court of Appeals ruled that Code § 362(a)(3) prohibits a creditor from asserting a claim against a third-party for its own benefit that the debtor can assert for the benefit of all of its creditors. 852 F.2d at 136. *See also, In re U.S. Marketing Concepts, Inc.*, 113 B.R. 487, 490 (Bankr.N.D.Ind.1990) (Code § 362(a)(3) "prohibits a creditor's prosecution of an action which could also be assert-

ed by the bankruptcy trustee"). This is the law because "property of the estate," which is protected by Code § 362(a)(3), is defined by Code § 541(a) to include any cause of action that the [debtor] may be entitled to prosecute against third parties for the benefit of the estate and, ultimately, its creditors. *Pappas,* 852 F.2d at 135; *S.I. Acquisitions Inc. v. Eastway Delivery Service, Inc.,* 817 F.2d 1142, 1151 (5th Cir. 1987) ("If an action ... belongs to [the debtor] corporation and partnership under state law, then the action is 'property of the estate.'") *See also Pierson & Gaylen v. Creel & Atwood (Matter of Consolidated Bancshares, Inc.),* 785 F.2d 1249, 1253–54 (5th Cir.1986); *American National Bank v. Mortgage American Corp.,* 714 F.2d 1266, 1276–77 (5th Cir.1983).

In *Pappas,* both the bankruptcy trustee and a creditor brought "alter ego" claims against the corporate debtor's shareholders seeking to hold them liable personally for the debtor's debts. The trustee compromised his claim with the shareholders, dismissed his complaint with prejudice and released them from further liability. The district court subsequently dismissed the creditor's alter ego claim based on the trustee's release of the shareholders. The Fourth Circuit affirmed the district court's decision based on the trustee's prior dismissal of the same claim. The court reasoned that the "alter ego" claim was "property of the estate" because, under applicable state law, the corporation, as well as the creditors, could bring an alter ego claim against the debtor's principals. *Id.* at 135. Because the claim was property of the estate, the Court ruled, Code § 362(a)(3) precluded creditors from pursuing the claim on their own:

> Since the alter ego claim against Pappas and Hawk USA is "property of the estate" within the meaning of § 541(a)(1), certain conclusions follow. *First, the automatic stay applies.* Moreover, because the claim is property of the estate, the trustee is given full authority over it. 4 Collier on Bankruptcy § 541.02[2] (15 ed. 1990).

*Id.* at 136 (emphasis added).[4]

Applying this rule to defendant Anchor Bank's complaint against the Partners, the bankruptcy court properly concluded that Code § 362(a)(3) stayed the continued prosecution of such action. First, the defendant's action to recover a partnership debt is one that can also be asserted by the debtor. By way of its complaint, the defendant seeks to collect from the Partners debts owed to it on two unsecured notes from the debtor. South Carolina law empowers the debtor to pursue an action against the general partners to compel them to pay all partnership debts, however, for the benefit of *all* of its creditors, not just the defendant. This power is set forth in Sections 33–41–510 and 33–41–1060 of the South Carolina Uniform Partnership Act (the "Partnership Act"), which provide in pertinent part as follows:

> The rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them, by the following rules;
> (1) ... each partner must contribute toward the losses, whether of capital or otherwise, sustained by the partnership ...
> Section 33–41–510(1)
>
> \* \* \* \* \* \*
>
> In settling accounts between the partners after dissolution, the following rules shall be observed, subject to any agreement to the contrary:
> (1) The assets of the partnership are:
> (a) the partnership property and
> (b) *the contributions of the partners necessary for the payment of all liabilities* ...
> (4) The partners shall contribute, as provided by § 33–41–510, the amount necessary to satisfy the liabilities ...

Section 33–41–1060(1) and (4) (emphasis added).[5]

Under South Carolina law, therefore, the assets of the partnership include "contributions of the partners necessary for the payment of all liabilities ..." These two provisions of the Partnership Act empower the debtor to compel each partner to contribute to the losses of the partnership. S.C.Code § 31–41–1060; 4 Collier on Bankruptcy § 723.05 (15th ed. 1990) ("[this section] gives a partnership the right to compel contributions from its partners.")[6] Like all property existing prior to bankruptcy, the partnership's prepetition property interest in "contributions of the partners necessary for the payment of all liabilities" and chose in action against the Partners passes to the partnership bankruptcy estate under Code § 541(a) and may be enforced by the debtor to the extent of any deficiency of the debtor's prop-

---

**4.** Thus, in the Fourth Circuit the rule is settled that Code § 362(a)(3) stays automatically—without a restraining order—a creditor's claim against a third-party that the debtor can assert for the benefit of the estate. This same rule has been embraced by other courts. In *In re U.S. Marketing Concepts, Inc.,* 113 B.R. 487, 490 (Bankr.N.D.Ind.), for example, the court also concluded that Code § 362(a)(3) prevents prosecution of certain claims against nondebtors where those claims are property of the estate, including actions to pierce the corporate veil and actions to recover fraudulent transfers.

**5.** In addition to the partnership's power to compel contribution from its partners to pay its liabilities, Code § 723(a) empowers a chapter 7 trustee to recover from a debtor partnership's general partners "a deficiency of property of the estate to pay in full all claims" against partnership. Under Code § 103(b), only a chapter 7 trustee can maintain an action under Code

§ 723(a) against a general partner. *See In re Monetary Group,* 55 B.R. 297, 298 (Bankr. M.D.Fla.1985). In the event that the debtor is unsuccessful in its effort to reorganize and the case is converted to one administered under chapter 7, however, the argument in favor of applying the stay to the defendant's action against the Partners applies with equal force.

**6.** In addition, under Section 33–41–1060(5) of the Partnership Act, "[a]n assignee for the benefit of creditors ... [has] the right to enforce the contributions from partners required by Section 33–41–1060(4)." Under Code § 544(a)(1), the trustee stands in the shoes of such a person and thus can enforce such rights for the benefit of all creditors. Under Code § 1107(a), the debtor-in-possession can also do so because the debtor-in-possession has the rights of a trustee under Code § 544. 5 *Collier on Bankruptcy* 1107.01[3] (15th ed. 1990).

erty to satisfy the claims of creditors. 4 *Collier on Bankruptcy* § 723.02 (15th ed. 1990).

 Because the right to compel contributions from general partners of a partnership is property of the estate, Code § 362(a)(3) prevents the prosecution of the defendant's action against the partners. This is true because such action is "an act to obtain possession of property of the estate or to exercise control over property of the estate." *See Matter of U.S. Marketing Concepts, Inc.*, 113 B.R. 487, 490 (Bankr.N.D.Ind.1990) citing *Pappas*, 852 F.2d 132 (4th Cir.1988). ("[B]y protecting property of the estate, the automatic stay prevents the prosecution of certain claims against non-debtors where those claims are property of the estate".)

Appellant Anchor Bank has urged that its rights to proceed against Webster, Litchfield Partners, and Litchfield Enterprises is separate and legally distinct from the right of the debtor to compel its general partners to pay the debts of the debtor partnership. Thus, the appellant contends that proceeding against the general partners is not an act to obtain possession of property of the estate or to exercise control over property of the estate, prohibited by § 362(a). While it is true that the appellant's right to proceed against the general partners is not identical to the debtor's rights under South Carolina law, nevertheless, proceeding against the general partners would necessarily impair the debtor's exercise of its right to compel its general partners to pay its debts, thus interfering with property of the estate. The Fourth Circuit has recognized that when proceedings against non–bankrupt third parties "would reduce or diminish 'the property of the debtor ... to the detriment of the debtor's creditors as a whole'" then a court may properly stay these proceedings pursuant to § 362. *Credit Alliance Corp. v. Williams*, 851 F.2d 119 (4th Cir.1988), quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir.), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986).

The bankruptcy court's application of the rule set forth by the Fourth Circuit in *Pappas* to the defendant's action against

the Partners is not only consistent with, but necessary to promote, the fundamental bankruptcy principle of preserving property of the estate to ensure a ratable distribution to creditors.

"The purpose of the automatic stay of Code § 362 is to preserve what remains of the debtor's insolvent estate and to provide a systematic and equitable liquidation procedure for all creditors, ...., H.R. rep. No. 595, 95th Cong., 1st Sess. 340 (1977), reprinted in [1978] U.S.Code Cong. Ad.News 6296–97, thereby preventing a 'chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.'" (Citations omitted). *Matter of Holtkamp*, 669 F.2d 505, 508 (7th Cir.1982).

Recognizing this same point, the court in *U.S. Marketing Concepts, Inc.*, 113 B.R. 487 held that Code § 362(a) prevented a creditor from recovering, under applicable state law, property fraudulently conveyed to a third party by the debtor because the trustee could prosecute the same claim for the benefit of all creditors. *Id.* at 490. Relying on *Pappas* and similar authority, the court reasoned that this result was necessary to promote the fundamental purpose of bankruptcy law:

"In this way the breadth of the automatic stay helps to ensure one of the primary goals of the bankruptcy process—a ratable distribution of the bankruptcy estate—by protecting creditors from each other. It "prevents a multi-jurisdictional rush to judgment whose organizing principle could only be first-come-first-served, and protects the interests of all creditors by treating like-situated claimants equally." Bankruptcy vests the right to prosecute such claims in the trustee, who is given complete authority over them, for the benefit of all creditors. By doing so, "[t]he trustee's single effort eliminates the many wasteful and competitive suits of individual creditors."

*Id.* at 490. (Citations omitted.)

The same reasoning applies foursquare to Anchor Bank's action against Webster and the debtor's other partners. Webster

is personally liable for all of the obligations of the debtor, not just the debt owed to Anchor Bank. The debtor has the power, under state law, to compel Webster to contribute to the satisfaction of the debtor's claims in connection with its proposed plan of reorganization. The bankruptcy court's application of Code § 362(a)(3) to prevent Anchor Bank's rush to judgment against Webster allows the debtor to pursue Webster and the other partners for the benefit of all creditors, free from the wasteful and competitive action of individual creditors.

### III.

In addition to concluding that Anchor Bank's complaint against the debtor's partners was stayed automatically by Code § 362(a)(3), the bankruptcy court exercised its discretion pursuant to Code § 105(a) to extend the automatic stay to enjoin the action and prevent Anchor Bank from seeking collection of its claim from the Partners and McKissick.

■ In *A.H. Robins Company, Inc. v. Piccinin*, 788 F.2d 994 (4th Cir.1986), the United States Court of Appeals for the Fourth Circuit ruled that, even when Code § 362(a)(1) does not stay automatically litigation against third parties, the bankruptcy court has jurisdiction to extend the stay to enjoin proceedings against non-bankrupt co-defendants. *Id.* at 999. The *Robins* court held that the bankruptcy court's jurisdiction to enjoin suits involving codefendants or third-parties may be based on two provisions of the Code—§§ 362 and 105— as well as on the general equitable powers of the bankruptcy court under 28 U.S.C. § 1334. As discussed below, the bankruptcy court's decision to stay proceedings is within its discretion and should be exercised when a stay is necessary to protect the debtor's successful reorganization, to ensure a ratable distribution to similarly situated creditors, or otherwise to protect the court's ability to carry out the provisions of the Code.

■ In exercising its discretion on a request for a preliminary injunction, the court must apply the test set forth in *Blackwelder Furniture Co. v. Seilig Mfg.*

*Co., Inc.*, 550 F.2d 189, 195 (4th Cir.1977) and *Telvest v. Bradshaw*, 618 F.2d 1029, 1032 (4th Cir.1980). Under this test, the first step required by the court is to balance the "likelihood" of irreparable harm to the plaintiff against the "likelihood" of harm to defendant. *Blackwelder*, 550 F.2d at 195. If a decided imbalance of hardship should appear in the plaintiff's favor, then the court should issue the preliminary injunction if the plaintiff has "raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus, for more deliberate investigation." *Id.*, quoting *Hamilton Watch Company v. Benrus Co.*, 206 F.2d 738, 740 (2d Cir. 1953). In adopting the balance-of-hardships test, the Fourth Circuit acknowledged that, where serious questions are before the court, "it is a sound idea to maintain the *status quo ante litem*, provided that it can be done without imposing too excessive an interim burden upon the defendant." *Id.*

■ Applying the *Blackwelder* test to this case, the bankruptcy court carefully considered each element of the test and carefully weighed the evidence presented to it. Upon doing so, the court concluded that it should exercise its discretion and grant injunctive relief to the debtor because if left unrestrained, Anchor Bank's complaint would impair the debtor's ability to reorganize.

■ Because the decision to grant preliminary injunctive relief is within the discretion of the bankruptcy judge, his discretion can be reversed only if there has been an abuse of discretion. *In re MacDonald*, 755 F.2d 715, 716 (9th Cir.1985); *Matter of Boomgarden*, 780 F.2d 657, 660 (7th Cir. 1985) "[A] reviewing court may determine that the bankruptcy court abused its discretion only when there is a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing all of the relevant facts." *In re Posner*, 700 F.2d 1243, 1246 (9th Cir.1983) *cert. denied* 464 U.S. 848, 104 S.Ct. 155, 78 L.Ed.2d 143 (1983).

■ Anchor Bank argues that, even if the bankruptcy court carefully and proper-

ly applied the balance-of-hardships test, the preliminary injunction it granted, restraining Anchor Bank's action against the debtor's partners and a guarantor, goes "far beyond any other reported decision." Contrary to this argument, however, the weight of authority supports the proposition that under Code § 105 a bankruptcy court may enjoin creditor from proceeding against an individual partner of a bankrupt partnership if necessary to protect the bankruptcy estate. *In re Costa and Head Land Co.*, 68 B.R. 296, 298 (N.D.Ala.1986) citing *Noel Manufacturing Co. v. Marathon Manufacturing Co.*, 69 B.R. 120, 121 (N.D.Ala.1985); *In re Northlake Building Partners*, 41 B.R. 231, 234 (Bankr.N.D.Ill. 1984); *In re Old Orchard Investment Co.*, 31 B.R. 599, 602 (W.D.Mich.1983); *But see In re Venture Properties, Inc.*, 37 B.R. 175, 176 (Bankr.D.N.H.1984); *In re Aboussie Brothers Construction Co.*, 8 B.R. 302, 303 (E.D.Mo.1982). In addition, a bankruptcy court may also enjoin, pursuant to Code § 105, a creditor from proceeding to enforce personal guarantees of the debtor's obligations when such enforcement injures the debtor's bankruptcy estate. *In re Lahman Mfg. Co., Inc.*, 33 B.R. 681, 682–84 (Bankr.D.S.D.1983); *In re Otero Mills, Inc.*, 21 B.R. 777, 778 (Bankr.D.N.M.), *aff'd*, 25 B.R. 1018 (D.N.M.1982). Thus, the court had ample authority to grant preliminary injunctive relief to the debtor to restrain Anchor Bank's action against McKissick (the guarantor of all of the debtor's bank debt) as well as the debtor's partners.

A careful examination of the record shows that not only was there ample evidence to support the bankruptcy court's decision to grant injunctive relief under the *Blackwelder* test, but the evidence was largely undisputed:

1. Under the first step in determining whether a preliminary injunction should be issued, the bankruptcy court was required to balance the likelihood of irreparable harm to the plaintiff against the likelihood of irreparable harm to the defendant. *Blackwelder*, 550 F.2d at 195. The court properly found that the balance of hardships weighed in favor of the debtor. The

court found that, without injunctive relief, the debtor's prospects to reorganize would be jeopardized. The assets of the debtor, Webster and McKissick are worth more to the debtor's creditors in a plan of reorganization allowing for their marketing and disposition in an orderly manner over an extended term than a liquidation caused by piece-meal litigation. With the exception of Anchor Bank, all of the debtor's creditors supported an out-of-court rehabilitation plan. The creditors, however, would not support a plan unless Anchor Bank was restrained.

Based on Webster's testimony, the court found that, if Anchor Bank was allowed to proceed with the South Carolina action against him, then he would be forced to file a bankruptcy petition. In bankruptcy, Webster's ability to conduct his business would be impaired and the value of his assets would be adversely impacted. The bankruptcy court further found that, for these reasons, a bankruptcy filing by Webster would significantly adversely impact Webster's ability to contribute financially to the debtor's reorganization and thus would be detrimental to the debtor and its efforts to reorganize.

The court further found that Webster and McKissick had pledged their assets to the successful reorganization of the debtor and that their contribution to a successful reorganization could be substantial. The court concluded that a judgment by Anchor Bank against Webster and McKissick would impair the debtor's ability to reorganize.

The court also found that an order restraining Anchor Bank from proceeding against Webster and McKissick would impose comparably little hardship, if any, on Anchor Bank. The court found that Anchor Bank would not be prejudiced by the delay because no other creditors were pursuing Webster, the other partners and McKissick and they had agreed to take no action to dissipate voluntarily their assets during the pendency of the case. The court included in its order a mechanism to prevent any action by Webster and McKissick that might prejudice Anchor Bank and other creditors. Moreover, the court found that the injunction did not harm Anchor

Bank because its actions against Webster were certain to cause Webster's bankruptcy. A bankruptcy filing by Webster, the court concluded, would hurt all creditors, including Anchor Bank.

In sum, a careful review of the court's order shows that it carefully weighed the evidence and concluded that the balance of hardships weighed decidedly in favor of granting preliminary injunctive relief.

2. Having determined that the balance-of-hardships weighed in favor of the debtor, the court was then required to determine whether the debtor had raised a "likelihood of success on the merits." *A.H. Robins Co.*, 788 F.2d at 1008. This test is satisfied by a showing that there is a "probability of successfully effectuating a plan of reorganization." *In re Costa and Head Land Co.*, 68 B.R. 296 (N.D.Ala. 1986). During the hearing, the debtor offered substantial evidence that its chances for a successful reorganization were excellent. The debtor also offered evidence that, with the exception of Anchor Bank, all creditors supported the debtor's plan to reorganize. Anchor Bank offered no evidence to the contrary. Based on the debtor's undisputed evidence, the bankruptcy court properly found that the debtor had "a reasonable likelihood of successful reorganization."

3. Finally, the bankruptcy court determined that, in light of the debtor's excellent chances for a successful reorganization, the public interest was best served by issuing the preliminary injunction.

Thus, the bankruptcy court did not abuse its discretion in granting the debtor's request for a preliminary injunction restraining Anchor Bank's lawsuit against the Partners and McKissick, but undertook a careful balancing of the factors under the *Blackwelder* test.

### IV.

NOW, THEREFORE, IT IS ORDERED that the Order of the Bankruptcy Court is AFFIRMED IN ITS ENTIRETY.