In re LAHMAN MANUFACTURING
COMPANY, INC., Debtor.

LAHMAN MANUFACTURING COMPA-
NY, INC., Fritz Lahman and Arlyne
Lahman, Plaintiffs,

v.

FIRST NATIONAL BANK OF
ABERDEEN, Aberdeen, South
Dakota, Defendant.

Bankruptcy No. 182–00116.
Adv. No. 183–0024.

United States Bankruptcy Court,
D. South Dakota.

Oct. 7, 1983.

Joe L. Maynes, Maynes, Tonner, Maynes & Tobin, Aberdeen, S.D., for plaintiffs.

James A. Wyly, Richardson, Groseclose, Kornmann, Wyly, Wise & Klinkel, Aberdeen, S.D., for defendant.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

### THE FACTS

Lahman Manufacturing Company, Inc. (debtor), filed its petition in bankruptcy under Chapter 11 on November 3, 1982.[1] Less than two weeks later, a secured creditor, the First National Bank of Aberdeen (bank),[2] brought suit against Fritz and Arlyne Lahman, the principle shareholders and officers of the debtor, to collect on personal guarantees of debtor-corporate obligations to the bank. On February 9, 1983, counsel for the debtor sought an injunction in this Court against the bank prohibiting it

[1.] See 11 U.S.C. § 1101 et seq.

from further proceedings against the Lahmans. The same day, this Court granted a temporary restraining order prohibiting the bank from proceeding against the guarantors, Fritz and Arlyne Lahman, pending a trial on a preliminary injunction.

Subsequently, the Court held an extensive trial to determine whether a preliminary injunction should issue against the bank. Thereafter, the matter was taken under advisement pending receipt of briefs from both parties.

### THE ISSUES

This case presents three issues for resolution:

1. Whether this Bankruptcy Court has jurisdiction to enjoin the First National Bank of Aberdeen from proceeding in state court against non-debtor guarantors of a corporate debtor's obligation;

2. Whether a preliminary injunction preventing the First National Bank of Aberdeen from proceeding against the non-debtor guarantors should issue; and

3. Whether a preliminary injunction restraining the First National Bank of Aberdeen from enforcing the guarantees of non-debtor third parties deprives the bank of property without due process of law in violation of the Fifth Amendment to the United States Constitution.

#### Jurisdiction

■ Section 105(a) of Title 11 of the United States Code gives a bankruptcy court the power to issue "any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." It is commonly recognized that a bankruptcy court may enjoin a party from proceeding against parties other than a debtor under appropriate circumstances. *In re Landmark Air Fund II,* 19 B.R. 556 (Bkrtcy.N.D. Ohio 1982); *In re Larmar Estates, Inc.,* 5 B.R. 328 (Bkrtcy.E.D.N.Y.1980); and *In re Otero Mills, Inc.,* 21 B.R. 777 (Bkrtcy.N.M.

[2.] Now known as Norwest Bank of Aberdeen.

1982), *aff'd,* 25 B.R. 1018 (D.C.D.N.M.1982). The jurisdictional test is whether failure to enjoin would affect the bankruptcy estate and would adversely or detrimentally influence and pressure the debtor through a third party. *In re Otero Mills, Inc., supra.*

In the instant case, the guarantors of the corporate debt own a substantial amount of unencumbered farm real estate. Fritz Lahman, President of the debtor corporation, testified that the corporation was unable to obtain credit and, therefore, he anticipated using his personal real estate holdings as collateral to raise funds to finance the reorganization effort. Clearly, if the suit against the Lahmans to collect on the guarantees is allowed to proceed, the corporate debtor's estate would be affected and the corporate debtor would be detrimentally and adversely affected. In fact, reorganization would be impossible without a source of adequate financing. Accordingly, this Court has jurisdiction to enjoin the bank from proceeding against the guarantees of Fritz and Arlyne Lahman upon the proper showing by the debtor. Moreover, the Court's jurisdiction to do so is not impaired under the Emergency Rule issued by the South Dakota District Court on December 22, 1982. *See Otero Mills v. Security Bank and Trust,* 28 B.R. 386 (D.C.D.N.M. 1983).

### Injunctive Relief

The debtor has requested and received a temporary restraining order preventing the bank from proceeding further in state court on the loan guarantees of Fritz and Arlyne Lahman. The Court must now consider the propriety of converting the temporary restraining order into a permanent injunction. The proper test in the Eighth Circuit for whether a preliminary injunction should issue involves consideration of four factors: (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Dataphase Systems, Inc. v. C L Systems, Inc.,* 640 F.2d 109, 114 (8th Cir.1981) *(en banc).* This Court is fully aware that the grant or denial of injunctive relief is within the sound discretion of the trial court. *Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action,* 558 F.2d 861, 866 (8th Cir.1977).

The debtor argues that irreparable harm will result to the bankruptcy estate if the bank is allowed to proceed with its state court action to enforce the personal guarantees of corporate stockholders and officers, Fritz and Arlyne Lahman. Fritz Lahman, the debtor's president, testified that the debtor had been unsuccessful in attempts to obtain credit to finance the reorganization effort. He further explained that the only available source of financing capital was a substantial amount of unencumbered farm real estate owned by him and his wife. Funds obtained using the land as security would be used to purchase supplies and meet payroll expenses as contemplated by the debtor's plan of reorganization.

If the bank is allowed to proceed with its state court action against Fritz and Arlyne Lahman, the farm real estate will eventually be foreclosed upon by the bank. The evidence is undisputed that culmination of the state court action would effectively eliminate the only available source of financing for the debtor's reorganization. Without fresh financing, there will be no reorganization. Therefore, the Court finds that absent the requested injunction, the debtor will be irreparably harmed.

The next element to be considered is the state of balance between the harm the debtor will occasion if the preliminary injunction is not granted and the injuries that will be inflicted on the bank if the preliminary injunction is granted. The Court has already found that without the injunction, the debtor would be unable to reorganize and thus forced into liquidation. The harm inflicted on the bank if the requested injunction is granted is more difficult to assess. In bankruptcy, a secured creditor is secured only to the extent of its

allowed secured claim. 2 *Collier on Bankruptcy* ¶ 361.01 (15th ed. 1980). A debtor may not use a creditor's property between the filing date of the bankruptcy and the commencement of a plan without the creditor's being adequately protected for its use or possession. *Id.*

The creditor, however, has the obligation to ask the Court to provide adequate protection or, if none is forthcoming, possession of the creditor's collateral. *See* 11 U.S.C. § 362(d). A creditor customarily obtains such determinations and protections by filing an adversary proceeding or an appropriate motion. *See* Bankruptcy Rule 7001 (action to determine validity, priority or extent of lien); Bankruptcy Rule 4001 (relief from the automatic stay or adequate protection); and Bankruptcy Rule 3012 (valuation of claim secured by lien on property). Although the debtor in the instant case filed its petition in bankruptcy on November 3, 1982, as of the date of this opinion, the bank has taken no formal action under the Bankruptcy Code or Rules to determine the value of its claim or to request adequate protection. Absent the bank's making a formal demand for adequate protection, the Court must assume that the bank is adequately protected and, consequently, that the granting of the requested preliminary injunction will not cause the value of its secured claim, whatever it might be, to be less than adequately protected.

The bank has held personal guarantees from Fritz and Arlyne Lahman for over ten years. It appears, however, that the bank has never asked for or received a mortgage or security interest in any specific item of property owned by the Lahmans as individuals. The guarantees signed by the Lahmans do not restrict their ability to sell, mortgage, devise, or otherwise convey their personal holdings in farm real estate or any other property. Presumably, the bank was in a position to demand a mortgage or agreement not to mortgage or convey at the outset of the financing arrangement that has spanned over a decade but did not do so. In short, the bank's rights under the guarantees have been subject to complete defeasance through the actions of the individual guarantors since the inception of the agreements.

■ At best, the bank has a bare contractual right to proceed on the guarantee against the personal assets of the Lahmans. No claim of any rights in specific property of the Lahmans is contended or proved. The contractual right to proceed in state court on the guarantees can be protected by the Court's enjoining the Lahmans from mortgaging, selling, or otherwise encumbering their farm real estate without further order of this Court. The issuance of such an injunction would protect the bank's interests by preventing third parties from obtaining rights in the farm real estate while the bank is prevented from proceeding on the guarantees.

Although a party to a bankruptcy proceeding must ordinarily request injunctive relief by way of complaint (*See* Bankruptcy Rules 7001 *et. seq.*), the Court will issue an order enjoining Fritz and Arlyne Lahman from selling, mortgaging, or otherwise encumbering their farm real estate without further order of the Court. This injunction, however, in no way precludes negotiations with third parties in contemplation of raising capital to finance the reorganization effort as envisioned by a proposed plan. Moreover, it does not, by itself, raise the bank's bare contract right to the level of a vested property right in any specific items of real or personal property.

Because the bank has not properly litigated or established the presence or existence of a lack of adequate protection and because the Court has enjoined the Lahmans from selling, mortgaging, or otherwise encumbering their farm real estate without further order of the Court, the Court finds that the harm facing the debtor if the requested injunction is not granted—liquidation—far exceeds the harm occasioned on the bank by the interruption of a law suit.

The third prong of the preliminary injunction test addresses the probability that the moving party will be successful on the merits. In the bankruptcy context, the probability of success on the merits has

been defined as the probability of a successful plan of reorganization. *In re Otero Mills, Inc., supra.* The instant debtor's plan of reorganization is not yet due, but the debtor is entitled to present a plan that can be considered by all the creditors. *In re Otero Mills, Inc., supra.* Moreover, if the bank is allowed to proceed on the guarantees, the debtor's ability to file a successful plan will be significantly, if not totally, impaired because of the unavailability of credit.

A bankruptcy court should resolve issues in favor of reorganization. *In re Heatron, Inc.,* 6 B.R. 493, 496 (Bkrtcy.W.D. Mo.1980). Evidence presented to the Court indicated that the debtor had always been a profitable business until it incurred nearly one and one-half million dollars of legal, accounting, and damage expenses arising out of patent litigation. The patent in issue expires in January of 1984 when the debtor may once again begin to manufacture its most profitable product, a haymover. The debtor experienced interest rates that approached twenty per cent during the last several years and was further hampered by drought in its sales area. There is a demand for the debtor's products but funds are needed for their manufacture during the reorganization. The bankruptcy process is, of necessity, equitable in nature. *In re Ware Spaces, Inc.,* 5 B.R. 204, 206 (Bkrtcy.D.Haw.1980). Consequently, although determining the probability of a successful reorganization is always somewhat speculative at this stage of the reorganization process, nevertheless, the debtor must be allowed to present a plan. Should the debtor fail to do so or the plan is not approved, the bank may ask this Court to dissolve the injunction.

Finally, the Court must consider the public interest in the grant or denial of injunctive relief in this case. The debtor manufactures farm implements in the small prairie town of Hecla, South Dakota, which has a population of 450. The debtor is the largest consumer of municipal power, the number one user of the local post office, and, most importantly, the largest employer in town. At full production, the debtor expects its payroll to once again exceed 100 employees. Considering these facts, it is reasonable to conclude that the future economic vitality of Hecla, South Dakota, and many of the families who reside there, depends upon the successful reorganization of the debtor. Consequently, the Court finds that enjoining the bank from proceeding against the individual guarantees of Fritz and Arlyne Lahman is in the public interest.

The Court has examined the debtor's request for a preliminary injunction against the requirements of the four-pronged test that is the law of this circuit. Moreover, it has considered the injunctive criteria in the context of the bankruptcy process. All four prongs of the legal test have been met, and even if the probability of success on the merits is somewhat speculative, the equities are otherwise strongly in favor of the movant. *A.B.A. Distributors, Inc. v. Adolph Coors Co.,* 661 F.2d 712, 714 (8th Cir.1981). Accordingly, based on the foregoing, the First National Bank of Aberdeen is enjoined from further proceedings against Fritz and Arlyne Lahman arising out of their personal guarantees for the indebtedness of Lahman Manufacturing Company, Inc., until further order of this Court. Because the Court has already heard extensive testimony on this matter and has had the benefit of briefs from both counsel, the preliminary injunction will be converted into a permanent injunction without further proceedings in this Court on October 20, 1983, at 9:00 a.m., unless either or both parties request an opportunity to submit additional evidence. *See* Bankruptcy Rule 7065 and Federal Rule of Civil Procedure 65.

### Constitutional Issue

The bank argues that a preliminary injunction preventing it from proceeding in state court to enforce the personal guarantees of Fritz and Arlyne Lahman unconstitutionally deprives it of property without due process of law. The bank has exten-

sively cited various sections of Am.Jur.2d and C.J.S. in support of its position.

The bankruptcy power under Article I, Section 8, Clause 4 of the United States Constitution is subject to the Fifth Amendment prohibition against the "taking" of private property without just compensation. *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935). This is true regardless of how "rational" the exercise of the bankruptcy power may be, as the taking of property in violation of the Fifth Amendment is a separate question. *United States v. Security Indus. Bank,* —— U.S. ——, 103 S.Ct. 407, 410, 74 L.Ed.2d 235 (1982). "Bankruptcy proceedings constantly modify and affect the property rights established by state law." *Wright v. Union Central Life Ins. Co.,* 304 U.S. 502, 517, 58 S.Ct. 1025, 1033, 82 L.Ed. 1490 (1938). As relates to the bankruptcy power, there is a significant difference between a property interest and a contract, as the Constitution does not preclude the impairment of contract rights. *Kuehner v. Irving Trust Co.,* 299 U.S. 445, 451–52, 57 S.Ct. 298, 301–302, 81 L.Ed. 340 (1937). Quite unlike the states, the Congress is not prohibited from passing laws that impair contractual obligations. *Continental Bank v. Rock Island Ry.,* 294 U.S. 648, 680, 55 S.Ct. 595, 608, 79 L.Ed. 1110 (1935). Indeed, it seems that the great weight of authority recognizes that the very essence of bankruptcy laws is the modification or impairment of contractual obligations.

Any approach to a Fifth Amendment question in the bankruptcy area must begin with a discussion of *Louisville Joint Stock Land Bank v. Radford, supra.* In *Radford,* an amendment to the Bankruptcy Act, the Frazier-Lemke Act, was struck down as a violation of the Fifth Amendment's prohibition of taking property without due process of law. The Frazier-Lemke Act was emergency legislation designed to assist insolvent farmers by providing a stay of mortgage foreclosure actions for five years with a lump-sum payment to be made at the end of the period which extinguished the mortgage. Reduced to its essentials, the holding in *Radford* precludes a bankruptcy court from constitutionally taking for the benefit of a debtor substantive rights in specific property acquired by the creditor prior to the effective date of the Act in question. Only two years after the *Radford* holding, the Supreme Court upheld the constitutionality of the Frazier-Lemke Act which had been amended to shorten the stay period for mortgages from five to three years. *Wright v. Vinton Branch of the Mountain Trust Bank of Roanoke,* 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937).

*Radford* and its progeny speak to vested rights in specific property. Thus, the bank in *Radford* held a mortgage in specific farm real estate. Along the same lines, the Supreme Court found a "taking" when the federal government took possession of partially completed ship hulls upon the default of a prime contractor to which the state law mechanics' liens of materialmen had already attached. *Armstrong v. United States,* 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1961). Even as recently as 1982, the High Court interpreted 11 U.S.C. § 522(f), allowing avoidance of nonpurchase money liens in exempt property, to apply prospectively and thus avoided an alternate interpretation which would have resulted in the "taking" of vested rights in specific property. *United States v. Security Indus. Bank, supra.*

In sharp contrast to *Radford,* *Armstrong,* and *Security Industrial Bank,* in the instant case, the First National Bank of Aberdeen has no vested interest in specific property of the Lahmans. The bank has no lien or mortgage on any of the personal holdings of Fritz or Arlyne Lahman; it has a contract right in the personal guarantees of the debts of the corporate debtor. Indeed, the nature of the bank's guarantees has been discussed at some length in the earlier portion of this decision concerning the availability of injunctive relief. The bank has not pleaded or proved to this Court that its guarantees rise to the level of a property right in specific property owned by the Lahmans. Although federal

courts have often relied on state law definitions of property rights, decisions of state courts defining property rights do not bind the federal bankruptcy courts when those decisions are contrary to the policy and proper construction of the bankruptcy laws. *Compare Kaiser-Aetna v. United States,* 444 U.S. 164, 100 S.Ct. 383, 392, 62 L.Ed.2d 332 (1979), and *Board of Trade of City of Chicago v. Johnson,* 264 U.S. 1, 44 S.Ct. 232, 68 L.Ed. 533 (1923). But this Court need proceed no further, as it concludes that the bank's rights in the guarantees and right to proceed on the guarantees do not rise above the level of a bare contractual right. The Court has not been furnished, nor has it been able to discover, any South Dakota law that requires a different conclusion.

Federal courts at all levels have denied the enforcement of contracts and clauses in contracts in the context of bankruptcy. *See Smith v. Hoboken Railroad and S.S. Connecting Co.,* 328 U.S. 123, 133, 66 S.Ct. 947, 953, 90 L.Ed. 1123 (1946); *Weaver v. Hutson,* 459 F.2d 741 (4th Cir.1972), *cert. denied,* 409 U.S. 957, 93 S.Ct. 288, 34 L.Ed.2d 227 (1973); *In re Sapolin Paints, Inc.,* 5 B.R. 412 (Bkrtcy.E.D.N.Y.1980). Accordingly, in light of the foregoing discussion, this Court concludes that the preliminary injunction preventing the First National Bank of Aberdeen from proceeding to enforce the personal guarantees of Fritz and Arlyne Lahman does not violate the bank's Fifth Amendment rights.

### CONCLUSION

Although the debtor questions the propriety of the .bank's off-setting certain funds in the guarantors' checking account against the corporation's debt, it did not address the issue in either of its briefs. Therefore, the Court will not consider that issue and further finds no other issues raised by either party not already discussed to merit analysis.

This Memorandum Decision constitutes the Court's Findings of Fact and Conclusions of Law in the above-entitled matter pursuant to Bankruptcy Rule 7052 and F.R. Civ.P. 52. Appropriate judgments and or-

ders will issue in accordance with Bankruptcy Rules 7065 and 9021. Counsel for the debtor will draft the order and judgment restraining the bank and counsel for the bank is directed to draft the order and judgment restraining the Lahmans.