**In re CODFISH CORPORATION, Debtor.**

**CODFISH CORPORATION, Plaintiff/Movant,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant/Respondent.**

**Bankruptcy No. B–88–01668(ESL). Adv. No. 88–0038.**

United States Bankruptcy Court, D. Puerto Rico.

May 31, 1988.

---

Richard A. Lee, San Juan, P.R., for plaintiff/movant.

Ismael Herrero, Jr., Correa Calzada, Collazo Salazar & Herrero, San Juan, P.R., for defendant/respondent.

## OPINION AND ORDER

ENRIQUE S. LAMOUTTE, Chief Judge.

This proceeding came before the Court on March 25, 1988 for an evidentiary hearing on plaintiff-debtor's request that the automatic stay provisions of 11 U.S.C. § 362(a) be extended to its president, Mr. Paulo da Cunha. Plaintiff seeks to enjoin the Federal Deposit Insurance Corporation (FDIC) from further prosecuting a civil action against Mr. da Cunha before the U.S. District Court. Plaintiff presented Mr. Paulo da Cunha as a witness. Defendant did not present evidence and relied on its position that, as a matter of law, the evidence presented did not justify the remedy requested.

### Findings of Fact

1. Plaintiff-debtor is a Puerto Rico corporation with its plant and offices in Ponce, Puerto Rico. It is in the business of processing and drying wet salted codfish imported from Alaska for distribution and sale in Puerto Rico, the United States and foreign markets. It is the only such processing facility in the United States (Tr. p. 40). All other plants, numbering approximately 50, are located in northern climates such as Portugal, Spain, Norway, Denmark and Canada. The drying process in a tropical climate, developed by the da Cunha family in Angola, is different and more delicate than in northern climates (Tr. pp. 40–42).

2. Paulo da Cunha is the founder, president and Chief Executive Officer of Codfish Corporation, for which he receives as compensation a salary of $3,000.00 a month, an apartment and a car leased by the company and medical insurance. (Tr. pp. 25–27, 33). He is not a stockholder (Tr. p. 26). He has no formal incentive compensation plan, but he has reason to believe that if the company is successful he will

get an ownership interest in the company (Tr. pp. 33–34).

3. Mr. da Cunha does not own any real property except for land located in Angola (Tr. 32) and has only the bare essentials in terms of personal property (Tr. 30–32).

4. From boyhood Mr. da Cunha has been exposed to and trained in the skills of hauling, grading, splitting, curing, drying and sorting fish (Tr. pp. 35–37). He is a university graduate with a major in business administration (Tr. p. 34). His technical skills and knowledge of the codfish markets has contributed materially to the development of Codfish Corporation (Tr. pp. 44–51).

5. Mr. da Cunha's father financed the organization of the corporation (Tr. 47).

6. On November 18, 1985 Codfish Corporation filed a petition for relief under Chapter 11 of the Bankruptcy Code.

7. Mr. da Cunha has not filed for bankruptcy.

8. On July 12, 1983, the debtor executed two promissory notes in the amounts of $500,000.00 and $750,000.00 in favor of Girod Trust Company (GTC). On July 12, 1983, by contracts entitled Loan Agreement and Open End Credit, Mr. da Cunha guaranteed the debtor's obligations to GTC. In addition, on May 25, 1983, Mr. da Cunha executed a document entitled Continuous Guarantee Without Collateral further guaranteeing the debtor's obligations to GTC. The GTC notes, as well as the guarantees, are now held by the FDIC.

9. On July 21, 1987, the debtor and the FDIC entered into a stipulation in settlement of controversies. The stipulation was approved on August 14, 1987. The stipulation provides for the compromise of the debtor's obligation to the FDIC and further provides for the release of guarantors, Enrique Petrovich Monllor and Enrique Petrovich Boscio (Tr. 54–55). The stipulation does not provide for the release of Mr. da Cunha, nor does it contain any promise by the FDIC to abstain from suing Mr. da Cunha on his guarantee (Tr. 69–70).

10. On August 17, 1987 FDIC filed suit in the District Court against Mr. da Cunha seeking to recover under his personal guarantees (Civil No. 87–1071). Exhibit B to the complaint in this proceeding. FDIC seeks judgment against Mr. da Cunha and codefendant Municipality of Ponce in the principal sum of $1,250,000.00 plus interest, costs and attorneys' fees.

11. The debtor's Certificate of Incorporation provides in part:

> Each director and officer of the Corporation (and each director or officer of any other corporation serving as such at the request of the Corporation because of the Corporation's interest in such other corporation), whether or not then in office, shall be indemnified by the Corporation against all costs and expenses reasonably incurred by or imposed upon him in connection with or arising out of any action, suit or proceeding in which he may be involved or to which he may be made a party by reason of his being or having been a director or officer of the Corporation or of such other corporation, except in relation to matters as to which he shall be finally adjudged in any such action, suit or proceeding to be liable for negligence or misconduct in the performance of his duty as such director or officer. In the case of settlement of any such action, suit or proceeding, such director or officer shall be indemnified by the Corporation against the cost and expense of such settlement ... (see, page 9, paragraph 5).

12. Mr. da Cunha testified that he would have no incentive to continue in his duties as president of the debtor if whatever benefits he could anticipate for himself from the reorganization of debtor would become subject to a judgment entered against him in favor of FDIC (Tr. pp. 63–64). He also testified that without his services debtor would be forced into liquidation (Tr. pp. 64–65), and that, in his opinion, he cannot be easily replaced under existing circumstances (Tr. p. 43). Under cross examination Mr. da Cunha testified that, if he left the company, the plant supervisor would also leave (Tr. p. 67).

## Conclusion of Law

As a general rule the automatic stay pursuant to 11 U.S.C. § 362(a) is limited to debtors and does not protect codebtors [1] *Austin v. Unarco Industries, Inc.,* 705 F.2d 1, 4–5 (1st Cir.1983), cert. denied 463 U.S. 1247, 104 S.Ct. 34, 77 L.Ed.2d 1454; *Teachers Insurance and Annuity Association of America v. Butler,* 803 F.2d 61 (2nd Cir.1986). The Court may, under 11 U.S.C. § 105(a) [2], enjoin actions to collect monies against guarantors of the debtor under special circumstances. *A.H. Robins Co. Inc. v. Piccinin,* 788 F.2d 994 (4th Cir.1986); *Ingersoll–Rand Financial Corp. v. Miller Min. Co.,* 817 F.2d 1424, 1427 (9th Cir.1987); *In re All Seasons Resorts, Inc.,* 79 B.R. 901 (Bankr.C.D.Cal. 1987). See also, *In re Johns Manville Corp.,* 33 B.R. 254, 263–64 (Bankr.S.D.N. Y.1983); *In re Old Orchard Investment Co.,* 31 B.R. 599, 603 (Bankr.W.D.Mich. 1983); *In the Matter of Rustic Manufacturing Inc.,* 55 B.R. 25 (Bankr.W.D.Wis. 1985); *In re Lahman Manufacturing Co., Inc.,* 33 B.R. 681 (Bankr.S.D.1983); *In re Otero Mills, Inc.,* 21 B.R. 777 (Bankr.D.N. M.1982).

This Court has held that the broad injunctive powers under 11 U.S.C. § 105(a) should be used sparingly. *In re Criadores de Yabucoa, Inc.,* 75 B.R. 96 (Bankr.P.R. 1987). If a creditor is to be enjoined and stayed from prosecuting an action against a codebtor pursuant to 11 U.S.C. § 105(a) the movant must establish through clear and convincing evidence that the estate would be substantially and adversely affected by the continuance of such an action. This court agrees with the decision by Bankruptcy Judge James E. Yacos in *Matter of Supermercado Gamboa, Inc.,* 68 B.R. 230, 234 (Bankr.P.R.1986) that the test set forth in *In re Otero Mills, Inc.,* supra, is too relaxed. A mere adverse effect is not sufficient to invoke the court's injunctive power under 11 U.S.C. § 105(a). The Court must, therefore, determine if the evidence clearly and convincingly shows that the estate will be substantially and adversely affected if the FDIC continues to prosecute the civil action against Mr. da Cunha.

The practice of indemnifying corporate officers and directors is common, *A.H. Robins Co., Inc. v. Piccinin,* supra at page 1007 fn. 13, and is not by itself sufficient to warrant that automatic stay provisions of 11 U.S.C. § 362(a) be extended under 11 U.S.C. § 105(a) to officers who act as guarantors to a debtor corporation. *In re All Seasons Resorts, Inc.,* supra at page 904. However, there are special circumstances in this case which go beyond the indemnity clause in debtor's by laws.

The standards to grant an injunction under 11 U.S.C. § 105(a) were clearly set forth in *Matter of Supermercado Gamboa, Inc.,* supra at page 233, as follows:

"In the First Circuit, as elsewhere, the four standard factors that the debtor corporation would have to establish to obtain injunctive relief are as follows: (1) That the debtor would suffer irreparable injury if the injunction were not granted; (2) That such injury outweighs any harm which granting injunctive relief would inflict on a defendant; (3) That the debtor has exhibited a likelihood of success on the merits; (4) That the public interest will not be adversely affected by the granting of the injunction. *Planned Parenthood League v. Bellotti,* 641 F.2d 1006, 1009 (1st Cir.1981); *Auburn News Co., Inc. v. Providence Journal Co.,* 659 F.2d 273, 277 (1st Cir.1981); *Lancor v. Lebanon Housing Authority,* 760 F.2d 361, 362 (1st Cir.1985). The same standards apply equally in the bankruptcy

---

**1.** The Bankruptcy Code specifically provides for a codebtor stay under 11 U.S.C. §§ 1201 and 1301. But such sections are not relevant to the facts herein.

**2.** 11 U.S.C. § 105(a) provides that:
"The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent any abuse of process."

context. *Matter of Electronic Theatre Restaurants Corp., supra* [53 B.R. 458 (N.D.Ohio 1985)]; *In re Gellert,* 55 B.R. 970, 975 (Bankr.D.N.H.1985)."

The operation of the debtor revolves and depends on one man; Mr. Paulo da Cunha. He is the person who not only has kept the corporation in operation, but is the only one available with the technical knowledge to process codfish in a tropical climate. Such a technique is a trade secret zealously guarded by the few who possess it. The number of people in the world with this technical knowledge is approximately fifty (50). This is a very minute number of people. Yet, the number substantially decreases when operations in a tropical climate are considered. The vast majority of the people with knowledge of processing codfish are only familiar with the technique used in cold climates. Very few know how to cope with a climate such as Puerto Rico. Mr. da Cunha knows this technique because he learned it in Angola, which also has a tropical climate. It is evident that Mr. da Cunha is one of a small and select group of people, and, that if he leaves the corporation the operation will immediately crumble and there will not be any probability of rehabilitation.

On the other hand, if we consider the rights of the FDIC to collect from Mr. da Cunha we are forced to conclude that even if the FDIC is ultimately successful in the litigation before the U.S. District Court, it will be an exercise in futility. At this time Mr. da Cunha has no assets from which the FDIC can collect. His asset is his knowledge, which at this time cannot be attached.

The aforementioned facts clearly indicate the factors warranting the issuance of an injunction have been met.

## Conclusion

In view of the foregoing the Court hereby enters a preliminary injunction barring the FDIC from further prosecuting its action to collect on funds loaned to debtor corporation and guaranteed by Mr. Paulo da Cunha as an individual; and it is further ordered that defendant FDIC show cause within thirty (30) days if there are any facts or reasons why a permanent injunction should not be entered.

SO ORDERED.