ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| JUAN VIERA BATISTA<br><br>Apelado<br><br>v.<br><br>LUIS MÁRQUEZ SÁNCHEZ<br>ESW MANUFACTURING, INC.<br><br>Apelante | **TA2026AP00109** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de San Juan<br><br>Civil Núm. SJ2025CV11312<br><br>Sobre: Desahucio y Cobro de Dinero |

Panel integrado por su presidenta la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

Bonilla Ortiz, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 19 de febrero de 2026.

Comparece ante nos el ESW Manufacturing, Inc. (ESW o "parte apelante") y nos solicita que revisemos una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, notificada el 26 de enero de 2026. Mediante el referido dictamen, el foro primario declaró Ha Lugar la Demanda, por consiguiente, ordenó el desahucio de ESW y archivó la demanda contra el Sr. Luis Márquez Sánchez (señor Márquez).

Por los fundamentos que expondremos a continuación, **CONFIRMAMOS** la *Sentencia* apelada.

### I.

El 19 de diciembre de 2025, el Sr. Juan Viera Batista (señor Viera o "el recurrido") presentó una *Demanda de Desahucio* y cobro de dinero en contra de ESW y el señor Márquez.[1] Alegó que, suscribió un *Contrato de Arrendamiento de Local Comercial* (*Contrato de*

---

[1] *Demanda de Desahucio*, entrada núm. 1 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

*Arrendamiento*) ubicado en San Juan, por la cantidad de $1,700.00 mensuales. No obstante, que la parte apelante llevaba dos meses sin pagar la renta, además de tener intereses acumulados. A su vez, que realizaron una modificación a la estructura sin autorización. Por lo tanto, solicitó se ordenara el pago de la renta adeudada por la cantidad de $3,400.00, intereses acumulados por $2,275.00 y por concepto de costas y gastos la cantidad de $2,000.00.

El 14 de enero de 2026, el señor Márquez presentó una *Moción Solicitando Desestimación y/o Sentencia por las Alegaciones*.[2] En esta, señaló que había comparecido como representante de ESW y no en su carácter personal. Por lo que, procedía la desestimación de la demanda en su contra.

El 26 de enero de 2026, el señor Márquez presentó una *Moción Solicitando Paralización*.[3] Informó que, el 15 de enero de 2026, ESW había radicado una petición de relevo al amparo del Capítulo 11 del Código de Quiebras, bajo el epígrafe 26-00084. Consecuentemente, solicitó la paralización del procedimiento.

En la misma fecha, luego de la celebración del juicio en su fondo, el foro primario notificó la *Sentencia* apelada. Mediante la cual, declaró *Ha Lugar* la *Demanda*, por consiguiente, ordenó el desahucio de ESW; y archivó el caso contra el señor Márquez. Asimismo, formuló las siguientes determinaciones de hechos:

> 1. La Parte Demandante es dueña del inmueble localizado en la Ave. 65 Inf. Km 3.5, parcela 403, San Juan, P.R. 00924 (en adelante, la "Propiedad").

---

[2] *Moción Solicitando Desestimación y/o Sentencia por las Alegaciones*, entrada núm. 5 en SUMAC.
[3] *Moción Solicitando Paralización*, entrada núm. 10 en SUMAC.

2. La Parte Demandante y la codemandada ESW otorgaron un contrato de arrendamiento de local comercial el 20 de enero de 2022 para el alquiler de la Propiedad (en adelante, el "Contrato de Arrendamiento").

3. El codemandado Márquez no es parte del Contrato de Arrendamiento.

4. El codemandado Márquez comparece en el Contrato de Arrendamiento como representante de la codemandada ESW.

5. El Contrato de Arrendamiento, tendría una vigencia de cuatro (4) años renovable por acuerdo entre las partes, retroactivo al 1 de diciembre de 2020.

6. El Contrato de Arrendamiento venció el 1 de diciembre de 2024.

De otra parte, en cuanto a la controversia sobre la petición de quiebra, determinó que dado a que la causa de acción estaba basada en un contrato de arrendamiento que había vencido el 1 de diciembre de 2024 sobre una propiedad no residencial, continuó el procedimiento únicamente con relación al desahucio y no permitió la acumulación de la causa de acción de cobro de dinero, toda vez que la orden de paralización no se extiende a contratos de arrendamiento de propiedad no residencial y su vencimiento ocurrió antes de la petición de quiebra.

Por lo tanto, concluyó que la parte apelante estaba ocupando una propiedad sin contrato de arrendamiento vigente y que, procedía la desestimación contra el señor Márquez, dado que, "las corporaciones tienen una personalidad jurídica individual y separada de la de sus miembros y, como tal, su patrimonio es distinto y separado de los patrimonios de sus accionistas."

Inconforme, el 1 de febrero de 2026, ESW presentó el recurso de apelación mediante el cual formuló el siguiente señalamiento de error:

EL TPI ERRÓ AL DETERMINAR QUE TENÍA JURISDICCIÓN PARA ATENDER EL CASO DE

DESAHUCIO, AUN CUANDO EL DEMANDADO HABÍA SOLICITADO PROTECCIÓN EN LA CORTE DE QUIEBRAS PREVIO A LA VISTA DE DESAHUCIO.

El 3 de febrero de 2026, emitimos una *Resolución*, mediante la cual le concedimos a la parte apelada el término establecido en el Reglamento de este Tribunal, según enmendado, 2025 TSPR 42, para presentar su alegato.

El 5 de febrero de 2026, el señor Viera presentó su escrito en oposición al recurso.

Contando con la comparecencia de las partes, procedemos a resolver el caso de epígrafe. Veamos.

**II.**

**-A-**

El Artículo 1230 del Código Civil de Puerto Rico, 31 LPRA sec. 9751, dispone que existe un contrato desde que dos o más personas consienten a obligarse entre sí a dar alguna cosa o a prestar algún servicio. Lo anterior resulta del principio de la autonomía de la voluntad, cuya esencia radica en otorgar un amplio margen de libertad de acción a los particulares que desean obligarse, siempre que sus acuerdos sean cónsonos con la ley, la moral y el orden público. 31 LPRA sec. 9753; *VDE Corporation v. F&R Contractors,* 180 DPR 21, 33 (2010); *BPPR v. Sucn. Talavera*, 174 DPR 686, 693 (2008).

Las obligaciones derivadas de los contratos tienen fuerza de ley entre las partes y deben cumplirse a tenor con lo acordado. 31 LPRA sec. 9754. La existencia de un contrato está sujeta a la necesaria concurrencia de los requisitos de consentimiento, objeto y causa de la obligación que se establezca. 31 LPRA sec. 9771. Así, una vez perfeccionado, el mismo no sólo obliga a lo expresamente pactado, sino también a todas sus

consecuencias de acuerdo a la buena fe, al uso y a la ley. 31 LPRA sec. 3375. Acreditadas dichas condiciones, los contratos rigen la conducta de todos los involucrados, no importa la forma en que los mismos se hayan celebrado. 31 LPRA sec. 3451; *Jarra Corp. v. Axxis Corp.*, 155 DPR 764, 772 (2001); *VELCO v. Industrial Serv. Apparel*, 143 DPR 243 (1997). De este modo, cuando un contrato es perfectamente legal, los tribunales de justicia están impedidos de relevar a una parte de acogerse a sus términos. *De Jesús González v. A.C.,* 148 DPR 255, 271 (1999); *Mercado, Quilichini v. UCPR*, 143 DPR 610 (1997). Sin embargo, cuando no se ha presentado evidencia suficiente tendente a establecer su existencia o el alcance de sus disposiciones, el juzgador concernido vendrá obligado a auscultar la validez y extensión del contrato de que trate. Así lo dispone el Artículo 354 del Código Civil de 2020, *supra*, al establecer lo siguiente:

> […]
>
> Si los términos de un negocio jurídico bilateral son claros y no dejan duda sobre la intención de las partes, se estará al sentido literal de sus palabras.
>
> Si las palabras parecen contrarias a la intención evidente de las partes, prevalecerá la intención sobre lo expresado.
>
> […]. 31 LPRA sec. 6342.

Es decir, la intención de las partes es el criterio fundamental para fijar el alcance de las obligaciones contractuales. *VDE Corporation v. F&R Contractors*, 180 DPR 21, 35 (2010); *Marcial v. Tomé*, 144 DPR 522, 537 (1997); *Unisys v. Ramallo Brothers*, 128 DPR 842, 852-853 (1991). Por eso, nuestro Tribunal Supremo ha expresado que "[e]l norte de la interpretación

contractual es determinar cuál fue la real y común intención de las partes". *VDE Corporation v. F&R Contractors*, supra, pág. 35 citando a *Municipio Mayagüez v. Lebrón,* supra, pág. 723. Por ello, "interpretar si un contrato es claro presupone concordar su letra con la intención de las partes." *Íd.*

Para auscultar la intención de los contratantes el Tribunal Supremo de Puerto Rico ha aplicado una metodología pragmática: estudiar los actos anteriores, coetáneos y posteriores al momento de perfeccionarse el contrato, incluyendo otras circunstancias que puedan denotar o indicar la verdadera voluntad de los contratantes como el acuerdo que se intentó llevar a cabo. 31 LPRA sec. 6342; *VDE Corporation v. F&R Contractors,* supra, pág. 35.

-B-

De otra parte, la novación constituye una de las causas de extinción de las obligaciones expresamente reconocidas por ley. 31 LPRA sec. 9421. Específicamente, consiste en la modificación de los términos de determinado vínculo, ya sea mediante la variación de su objeto o condiciones principales, de la persona del deudor, o mediante la subrogación de un tercero en los derechos del acreedor. 31 LPRA sec. 9422. Nuestro Tribunal Supremo ha reconocido que la novación incluye tanto la modalidad que tiene efectos extintivos, como la novación modificativa en virtud de la cual subsiste una obligación alterada. *PDCM Assoc. v. Najul Bez*, 174 DPR 716, 725 (2008); *Mun. De San Juan v. Prof. Research*, 171 DPR 219 (2007); *United v. Villa*, 161 DPR 609 (2004).

La novación extintiva se configura cuando las partes lo declaran en forma terminante o cuando la intención de novar se deriva de la incompatibilidad absoluta entre la obligación original y la nueva. 31 LPRA sec. 9423. En otras palabras, la novación extintiva es una figura que provee para la extinción de una obligación preexistente entre determinadas partes y, en consecuencia, para el nacimiento de una nueva que regirá su relación jurídica. J.R. Vélez Torres, *Derecho de Obligaciones: Curso de Derecho Civil*, Segunda Edición, San Juan, Universidad Interamericana de Puerto Rico, Facultad de Derecho, 1997, pág. 225. Así, el estado de derecho dispone que la novación debe cumplir con lo siguiente para que sea de carácter extintivo: 1) existencia de una obligación original válida que se extingue, 2) existencia de una obligación nueva que nace y que discrepa de la antigua y; 3) la existencia de un *animus novandi*, es decir, la voluntad expresa o tácita encaminada a la extinción de la obligación primitiva. Vélez, *op. cit.*, págs. 225-227.

Por otra parte, se concreta la novación modificativa de una obligación cuando se producen cambios secundarios o de poca envergadura respecto a un vínculo particular y los mismos no tienen el efecto de suprimir el pacto original. *Warner Lambert v. Tribunal*. 101 DPR 378 (1973). En *PDCM Assoc. v. Najul Bez*, 174 DPR 716, 726 (2008) nuestro Tribunal Supremo dispuso:

> [L]a novación modificativa no exige encontrar la voluntad expresa de extinguir una obligación por otra. Empero, es imprescindible hallar un ánimo de cambio. De esta forma, al determinar si nos encontramos ante un supuesto de novación modificativa, es necesario interpretar la voluntad de las partes. Ello, debido a que la novación encierra un asunto de intención

que debemos inferir de las circunstancias de cada caso y de la voluntad de las partes. Warner Lambert Co. v. Tribunal Superior, supra, pág. 389.

Por último, debemos señalar que el Tribunal Supremo ha establecido varias pautas interpretativas sobre la figura de la novación, entre estas: (1) que la novación nunca se presume, sino que ha de ser acreditada sin género alguno de duda; (2) que la novación es siempre una cuestión de intención, que deberá inferirse de las circunstancias que rodean cada caso en particular; (3) que la doctrina puntualiza el elemento de la voluntad de las partes como uno determinante de la novación; y (4) que por razón de que la extinción de la obligación conlleva la extinción de las garantías y demás derechos accesorios, esta solo puede producirse cuando las partes han tenido clara conciencia de ello. *Constructora Bauzá Inc., v. García López*, 129 DPR 579, 598 (1991); *Warner Lambert Co. v. Tribunal Superior,* supra, págs. 391-392.

### -C-

El desahucio es el medio que tiene el dueño de un inmueble para recobrar judicialmente su posesión. Se trata de un procedimiento reglamentado por los Artículos 620-634 del Código de Enjuiciamiento Civil, que responden al interés del Estado en atender expeditamente la reclamación del dueño de un inmueble, la cual se le ha impedido ejercer su derecho a poseer y disfrutar del mismo. 32 LPRA secs. 2821-2827; 2829-2832 y 2835-2838; *Cooperativa de Vivienda Rolling Hills v. Colón Lebrón*, 203 DPR 812 (2020).

Según el Artículo 621 del Código de Enjuiciamiento Civil, el desahucio procede contra "los inquilinos, colonos y demás arrendatarios, los administradores,

encargados, porteros o guardas puestos por el propietario en sus fincas, y cualquier otra persona que detente la posesión material o disfrute precariamente, sin pagar canon o merced alguna." 32 LPRA sec. 2822. De otra parte, el Artículo 620 del precitado Código, dispone que los legitimados para instar una acción de desahucio son "los dueños de la finca, sus apoderados, los usufructuarios o cualquiera otro que tenga derecho a disfrutarla y sus causahabientes." 32 LPRA sec. 2821.

El Tribunal Supremo de Puerto Rico ha reiterado jurisprudencialmente que el desahucio es "uno de los procedimientos más utilizados en nuestro país para reivindicar, mediante trámite y juicio sumario, la posesión y el disfrute de un inmueble." 32 LPRA sec. 282; *Turabo Ltd. Partnership v. Velardo Ortiz,* 130 DPR 226, 234-235 (1992). El objetivo principal del desahucio es recuperar la posesión material de un bien inmueble mediante el lanzamiento o la expulsión del arrendatario o precarista que lo detente sin pagar canon o merced alguna. *Escudero v. Mulero*, 63 DPR 574, 588-589 (1944). El demandado podrá solicitar que el procedimiento se convierta en ordinario, en caso de que presente otras defensas afirmativas, en consideraciones de otras acciones relacionadas con la acción de desahucio. *ATPR v. SLG Volmar Mathieu*, 196 DPR 5, 9-12 (2016). En virtud de lo anterior, los foros judiciales gozan de discreción para convertir el procedimiento de desahucio en uno ordinario, prorrogar términos, posponer señalamientos y permitir enmiendas a las alegaciones. *Turabo Ltd. Partnership vs. Velardo Ortiz*, 130 DPR 226, 241 (1992).

Los procesos de desahucio se centran únicamente en recobrar la posesión del inmueble, mediante el lanzamiento o expulsión del arrendatario o precarista que la detente. *Turabo Ltd. Partnership vs. Velardo Ortiz,* supra, págs. 234-235; *Mora Dev. Corp. vs. Sandín*, 118 DPR 733 (1987). Por ello, en la acción sumaria se debe limitar la concurrencia o consolidación de otras acciones o defensas. Cuando el demandado presenta otras defensas afirmativas, dicha parte puede solicitar que el procedimiento se convierta en uno ordinario. *ATPR v. SLG Volmar-Mathieu,* 196 DPR 5, 10 (2016). En tales casos, la reclamación estará sujeta a las reglas de la litigación civil ordinaria, excluyendo la reglamentación de desahucio y sus restringidas condiciones. *Íd*.

### -D-

La Ley de Quiebras Federal está codificada en el Título 11 del Código de los Estados Unidos. 11 USC sec. 1 *et. seq*. Su propósito fundamental consiste en conceder al deudor la oportunidad de reiniciar su vida económica, relevándole de todas las deudas descargables, a la vez que se protegen los intereses de los acreedores, distribuyendo entre estos los activos del deudor de acuerdo con las disposiciones del Código Federal de Quiebras. *Allende Pérez v. García*, 150 DPR 892, 898 (2000); *Campolieto v. Anaya*, 142 DPR 582, 590 (1997).

El procedimiento de quiebras se inicia con la presentación de una *Solicitud de Quiebra*. Este evento tiene el efecto jurídico de crear un "*estate*" o caudal constituido por los bienes del quebrado.[4] Conlleva además, la paralización automática de todo procedimiento

---

[4] La Sección 541 del Código de Quiebras, 11 USC sec. 541, especifica los bienes del deudor que constituyen parte del "*estate*".

o actuación contra el caudal del quebrado, el cual queda protegido hasta que se efectúe la liquidación correspondiente.

Por su parte, la sección 362(a) del Código de Quiebras, 11 USC sec. 362(a), regula la paralización automática ("*automatic stay*") de los procedimientos o actuaciones en contra de una persona o entidad que haya presentado una solicitud de quiebra ante el Tribunal de Quiebras. M. Bender, *Collier on Bankruptcy*, sec. 362.01, pág. 362-11 (Lawrence P. King ed., 15th ed. 2001). Específicamente dispone:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of:
>
> > (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title. 11 USC sec. 362 (a)

No obstante su amplio alcance, la protección que brinda la sección 362(a) no es ilimitada. Así pues, "there is nothing in the statute which purports to extend the stay to causes of action against solvent-defendants of the debtor." *Willford v. Armstrong World Inuds. Inc.*, 715 F.2d 124 (4th Cir. 1983); *Wedgeworth v. Fibreboard*, 70 F.2d 541 (5th Cir. 1983). Del mismo modo establece, que "[a]s a general rule, the automatic stay pursuant to 11 USC 362(a) is limited to debtors and does not protect codebtor." *Íd.*, 97 BR 132 (1998). En otras palabras, la sección 362(a) dispone que la paralización automática

opera en beneficio del peticionario de la quiebra exclusivamente y no para cualquier otro codeudor.

Consistente con lo anterior, nuestro Tribunal Supremo ha reconocido que la quiebra es una defensa personal que puede levantar únicamente el deudor peticionario, pero que no beneficia a otros codeudores. Bajo este supuesto, el acreedor no está impedido de entablar una reclamación para cobrar el balance restante de su acreencia contra aquel codeudor que no ha presentado una solicitud de quiebra y que por ello no tiene la protección que concede el "*automatic stay*". *Blás v. Hosp. Guadalupe*, 167 DPR 439 (2006); *US v. Bruno*, 747 F. 2d 53, 54-55 (1st Cir. 1984*); Raoca Plumbing v. Trans World,* 114 DPR 464, 465 (1983).

Finalmente, la Ley de Quiebras establece que la paralización automática de los procedimientos cobijados bajo dicha legislación no aplica en contra de aquellas acciones de desahucio que se realizan contra propiedades no residenciales cuando el contrato de arrendamiento se encuentra vencido. 11 USC sec. 362(b)(10). De igual forma, en el 11 USC sec. 541(b) establece que:

> b) Property of the estate does not include
>
> (1) ….
>
> (2) any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease before the commencement of the case under this title and ceases to include any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease during the case.

**III.**

En el caso de autos, ESW alega que incidió el foro primario al determinar que tenía jurisdicción para

atender el caso de desahucio aun cuando había radicado una petición de quiebra. Asimismo, sostiene que aun cuando el *Contrato de Arrendamiento* tenía un término de vigencia hasta el 1 de diciembre de 2024, las partes continuaron con el ánimo de mantener la relación, incluso el señor Viera continuó cobrando la renta hasta octubre de 2025. Por ello, resalta que hubo novación y habiendo radicado una petición ante el Tribunal de Quiebras le correspondía a este determinar el alcance de la relación entre las partes.

Por su parte, el señor Viera arguye que el foro primario tenía jurisdicción para atender el caso. Sostiene que, la quiebra no crea una jurisdicción exclusiva retroactiva, ni priva al Tribunal de adjudicar derechos posesorios. Asimismo, indica que el "*automatic stay*" no revive contratos vencidos, ni protege ocupaciones ilegales. Enfatiza que, tampoco hubo novación tácita ni contrato verbal, aun cuando realizaron pagos posteriores.

Del expediente ante nos surge que el 19 de diciembre de 2025, el apelado inició un procedimiento de desahucio y cobro de dinero contra la parte apelante ante el Tribunal de Primera Instancia, Sala Superior de San Juan. Sin embargo, durante el trámite de la acción, específicamente el 15 de enero de 2026, ESW se acogió a la protección de la Ley de Quiebras, *supra*.

En la *Sentencia* apelada, el foro primario determinó que la parte apelante estaba ocupando la propiedad arrendada sin un contrato vigente, toda vez que el *Contrato de Arrendamiento* venció el 1 de diciembre de 2024. Conforme la doctrina previamente citada, el desahucio se decreta una vez el tribunal determina que

el arrendatario tiene la posesión material o disfruta precariamente de la finca sin pagar canon o merced alguna. 32 LPRA sec. 2822.

Es fundamental que reiteremos que el *Contrato de Arrendamiento* suscrito entre las partes venció en diciembre de 2024. Conforme lo anterior, el foro primario indicó que no aplicaba la orden de paralización, debido a que el vencimiento del contrato ocurrió antes de que ESW presentara la petición de quiebra. De igual forma, no permitió la acumulación de la causa de acción de cobro de dinero.

Bajo la Sección 362 del Código de Quiebras, *supra*, cuando se presenta una petición de quiebras ocurre lo que se conoce como "*automatic stay*", lo que provoca que todo procedimiento judicial de cobro que se esté ventilando contra el quebrado se paralice inmediatamente después de presentada la petición. No obstante, la Ley de Quiebras dispone que la paralización automática de los procedimientos cobijados bajo dicha legislación no aplica en contra de aquellas acciones de desahucio que se realizan contra propiedades no residenciales cuando el contrato de arrendamiento ha vencido. 11 USC sec. 362(b)(10).

Consecuentemente, concluimos que el foro apelado no cometió el error señalado, tenía jurisdicción para atender la solicitud de desahucio. Conforme con la legislación federal, el contrato de arrendamiento y la propiedad objeto de esta causa no están cobijados por la paralización automática de los procedimientos de quiebra. La petición de quiebra fue posterior al vencimiento del contrato, por lo tanto, el *Contrato de*

*Arrendamiento* no formaba parte de las transacciones afectadas por la quiebra de ESW.

**IV.**

Por los fundamentos antes expuestos, **CONFIRMAMOS** la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones